888 So.2d 798 (2004)
STATE of Louisiana
v.
Arthur MAJOR, III.
No. 2003-K-3522.
Supreme Court of Louisiana.
December 1, 2004.
*799 Charles C. Fonti, Jr., Attorney General, J. Phil Haney, District Attorney, Anthony Jude Saleme, Jr., Assistant District Attorney, for Applicant.
Ellis & Ellis, Carey J. Ellis, III, for Respondent.
KIMBALL, Justice.
We granted the State's writ to review the correctness of the court of appeal's decision reversing the defendant's, Arthur Major, III, conviction for possession of cocaine in excess of 400 grams, a violation of La. R.S. 40:967(F)(1)(c), based on insufficiency of the evidence. For the reasons that follow, we hold that the court of appeal erred by substituting its appreciation of the facts and evidence presented at trial for that of the trier of fact and in finding that the State failed to prove each essential element of the crime beyond a reasonable doubt. We therefore reverse the court of appeal's judgment and reinstate defendant's conviction and sentence for the crime of possession of cocaine in excess of 400 grams.

Facts and Procedural History
At approximately 6:40 a.m. on June 9, 1997, State Trooper Lanny Bergeron pulled over a white 1997 Nissan Sentra driven by the defendant and occupied by three other individuals after observing a minor traffic violation near the Atchafalya Bridge while conducting a routine patrol on the I-10. Defendant emerged from the vehicle with his driver's license and Trooper Bergeron informed the defendant why he had been stopped.[1] When asked if he was the owner of the vehicle, the defendant answered that he had rented the vehicle in El Paso, Texas, when his vehicle had broken down on the way to California from New Orleans, Louisiana, to visit his mother. Defendant told Trooper Bergeron that after he had rented the vehicle, he continued on to California and was now just returning to New Orleans. Trooper Bergeron testified that the defendant was "really nervous" while he was speaking *800 with the trooper and the defendant's level of anxiety increased during the conversation. After speaking with the defendant, Trooper Bergeron walked to the vehicle and obtained a rental form for the car from the vehicle's front passenger. The trooper noticed that the paperwork for the vehicle was dated December 23, 1996, and had neither defendant's name, nor the name of any of his passengers, on the agreement. The trooper began questioning the passengers still sitting in the vehicle about their itinerary and obtained conflicting statements regarding their origin and destination. At this time, Trooper Bergeron also detected the odor of burnt marijuana emanating from the interior of the vehicle. Trooper Bergeron then explained his suspicions to defendant and asked for consent to search the car. Defendant signed a search consent form after advising the officer that he did not smoke marijuana but that his companions had been smoking it in the car earlier in the trip.
Around the time Trooper Bergeron obtained defendant's written consent to search the vehicle, Troopers Bernard and Courville arrived on the scene to assist. As the passengers were exiting the vehicle, Trooper Bernard observed one of the passengers throw down a package which was later determined to contain marijuana.[2] The ensuing search of the vehicle by Troopers Courville and Bergeron revealed two packages of cocaine concealed underneath the dashboard in a space behind the glove box accessible through a hole in the glove box over which the owner's manual had been carefully placed. The cocaine had been wrapped in gray duct tape, which did not provide a suitable surface for recovering any latent fingerprints. The search also yielded a box of dryer sheets, which Trooper Bergeron testified were often used to cover the presence of narcotics. However, the exact location of the dryer sheets in the passenger area of the vehicle could not be determined at the time of trial. All four occupants of the vehicle, including defendant, were arrested and charged with possession of cocaine with intent to distribute. The state subsequently amended the bill of information[3] and charged defendant with possession of over 400 grams of cocaine in violation of La. R.S. 40:967(F)(1)(c).
On March 12, 2002, defendant's jury trial commenced. The State presented evidence at trial that the cocaine found in the vehicle weighed approximately 1.36 pounds, or 609 grams, and was worth over $60,000.00. The State also presented the testimony of several officers, including Troopers Bergeron, Bernard, and Courville, relating to the stop and subsequent search of defendant's vehicle. Further, Trooper Bergeron noted the lack of a "shadow vehicle"[4] following defendant's car at the time of the stop. He testified that no other vehicle appeared to be trailing, observing, or watching over defendant's vehicle during the traffic stop. The defendant did not present any evidence at trial, rather defense counsel stated in her closing arguments that the State had the burden to prove defendant's guilt beyond a *801 reasonable doubt and "[t]he State has failed to prove Arthur Major is guilty of anything. This case is nothing but reasonable doubt." The jury found defendant guilty as charged and the district court later sentenced him to 40 years at hard labor. The defendant's motion to reconsider the sentence was denied and the defendant appealed.
On appeal, a majority of the court reversed defendant's conviction. State v. Major, 03-249 (La.App. 3 Cir. 10/8/03), 857 So.2d 1252. The court of appeal found defendant's first assignment of error alleging insufficient evidence to support a conviction meritorious, holding that
the State failed to establish that Mr. Major had guilty knowledge of the cocaine. The record evidence is simply insufficient for an inference of actual or constructive possession. Thus, a rational factfinder could not have concluded beyond a reasonable doubt that he was aware of the cocaine and that he exercised dominion and control over it.[5]
Specifically, in reversing the conviction, the court of appeal discounted the evidentiary significance of defendant's admission that he had rented the car, the conflicting accounts given of the itinerary by the group, and the presence of the dryer sheets inside the vehicle. The court concluded that the passengers' use of marijuana in the vehicle could explain any deceit in defendant's conflicting statements to the trooper, as well the presence of the dryer sheets inside the vehicle. The court also concluded that the rental agreement, which did not name defendant as the renter, was not indicative that he knew about the concealed cocaine under the dashboard. Therefore, the court of appeal found the evidence insufficient to sustain the defendant's conviction for possession of cocaine.
On the application of the State, we granted certiorari to review the correctness of the court of appeal's decision reversing the defendant's conviction and sentence in violation of La. R.S. 40:967(F)(1)(c). State v. Major, 03-3522 (La.4/30/04), 872 So.2d 470.

Law and Discussion
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See State v. Captville, 448 So.2d 676, 678 (La.1984). That standard dictates that to affirm the conviction the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that the State proved all elements of the crime beyond a reasonable doubt. State v. Johnson, 03-1228, p. 4 (La.4/14/04), 870 So.2d 995, 998; Captville, 448 So.2d at 678. Further, when the conviction is based on circumstantial evidence, La. R.S. 15:438 sets forth the rule that "assuming every fact to be proved that the evidence tends to prove, in order to convict, [the circumstantial evidence] must exclude every reasonable hypothesis of innocence." However, La. R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; rather it serves as a helpful evidentiary guide for jurors when evaluating circumstantial evidence. State v. Toups, 01-1875, p. 3 (La.10/15/02), 833 So.2d 910, *802 912; State v. Chism, 436 So.2d 464, 470 (La.1983). When evaluating circumstantial evidence, the trier of fact must consider
the circumstantial evidence in light of the direct evidence, and vice versa, [and] the trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence.

Chism, 436 So.2d at 469.
Finally, constitutional law does not require the reviewing court to determine whether it believes the witnesses or whether it believes that the evidence establishes guilt beyond a reasonable doubt. State v. Mussall, 523 So.2d 1305, 1309 (La.1988). Rather, the fact finder is given much discretion in determinations of credibility and evidence, and the reviewing court will only impinge on this discretion to the extent necessary to guarantee the fundamental protection of due process of law. Johnson at pp. 4-5, 870 So.2d at 998; Toups at p. 3, 833 So.2d at 912.
The defendant in the instant case was charged with possession of cocaine in excess of 400 grams, a violation of La. R.S. 40:967(F)(1)(c). To support a conviction for possession of cocaine, the State must present evidence establishing beyond a reasonable doubt that: (1) the defendant was in possession of the drug; (2) the defendant knowingly and intentionally possessed it; and (3) the amount possessed was "four hundred grams or more of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964." La. R.S. 40:967(F)(1)(c); State v. Sylvia, 01-1406, p. 3 (La.4/9/03), 845 So.2d 358, 361. Possession of narcotic drugs can be established by actual physical possession or by constructive possession. State v. Trahan, 425 So.2d 1222, 1226 (La.1983). A person can be found to be in constructive possession of a controlled substance if the State can establish that he had dominion and control over the contraband, even in the absence of physical possession. State v. Harris, 94-0970, p. 4 (La.12/8/94), 647 So.2d 337, 338-39.
A determination of whether there is sufficient "possession" of a drug to convict depends on the particular facts of each case. Trahan, 425 So.2d at 1226. Although mere presence in an area where drugs are located or mere association with one possessing drugs does not constitute constructive possession, this court has acknowledged several factors to be considered in determining whether a defendant exercised sufficient control and dominion to establish constructive possession, including: (1) his knowledge that drugs were in the area; (2) his relationship with the person, if any, found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug consumption; and (5) his physical proximity to drugs. Toups at p. 4, 833 So.2d at 913. The evidence at trial established that defendant had exercised dominion and control over the cocaine hidden underneath the dashboard of the car by virtue of his dominion and control over the vehicle as the driver and professed renter. Ortega v. United States, 270 F.3d 540, 545 (8th Cir.2001); see also State v. Walker, 03-188, p. 7 (La.App. 5 Cir. 7/29/03), 853 So.2d 61, 65-66, writ denied, 03-2343 (La.2/6/04), *803 865 So.2d 738 (holding that the driver and sole passenger had custody of the car and the cocaine found in the car was within his immediate control even though ownership of the vehicle was not proven). As driver and ostensible renter of the vehicle, the defendant had complete and authorized access to the glove box and dashboard area where the drugs were found. Furthermore, the location of the drugs was within the reach of and accessible to the defendant as the driver. These facts alone are sufficient to convince a rational trier of fact beyond a reasonable doubt that the defendant exercised ample control and dominion over the cocaine to constitute the required element of constructive possession.
Furthermore, guilty knowledge is an essential element of the crime of possession of cocaine. Sylvia at p. 3, 845 So.2d at 361. However, since knowledge is a state of mind, it need not be proven as fact, but rather may be inferred from the circumstances. Id. (citing Trahan, 425 So.2d 1222, 1227). At trial, Trooper Bergeron testified that defendant was "really nervous" during their initial conversation after the traffic stop. The trooper noted that although people are usually nervous after they are stopped for traffic violations, in his experience once the trooper explains the reasons for the stop, most people begin to calm down. Trooper Bergeron testified that troopers "start looking a little bit closer" when a person's nervous behavior increases, rather than decreases, during the course of the stop. Trooper Bergeron also stated that defendant professed to be the renter of the vehicle in question, claiming that he had rented the vehicle in El Paso when his car had broken down while on his way to visit family in California, and was now returning to his home in New Orleans after completing the trip. However, the rental agreement given to Trooper Bergeron by one of the vehicle's occupants was six months old and did not name defendant, or any of the three passengers, as the renter, and the passengers gave conflicting versions of the actual origin and destination of their trip. Furthermore, the State introduced evidence that a box of dryer sheets was located in the passenger compartment of the vehicle in question during the search. Trooper Bergeron testified that dryer sheets were one of several substances used by people to prevent the detection of narcotics by covering the odor of the narcotics or by attempting to throw off the drug detection dogs. Additionally, the State introduced evidence approximating the value of the 609 grams of cocaine discovered in the vehicle at $60,928.00. Furthermore, Trooper Bergeron testified to the lack of a "shadow vehicle" following defendant.
Based on the aforementioned evidence, it was entirely reasonable for the jurors to conclude that defendant knew the cocaine had been concealed behind the glove box. Because the defendant had dominion and control of the vehicle, he was thus in a position to have concealed the drugs in the car himself. Also, the sheer amount and value of the cocaine located in the car are indicative of drug dealing, and therefore it is reasonable to believe that the defendant, as driver and renter, had knowledge of such activity and was not an innocent third party. See Maryland v. Pringle, 540 U.S. 366, 124 S.Ct. 795, 801, 157 L.Ed.2d 769 (2003) ("The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him."); see also United States v. Serrano-Lopez, 366 F.3d 628, 635 (8 Cir.2004) ("The large quantity of drugs involved is evidence of the defendants' knowledge. Even if the drugs were not owned by the defendants, it is unlikely that *804 the owner would place approximately $130,000 worth of cocaine in the hands of people who do not even know it is there."). Additionally, the jury could have reasonably relied upon Trooper Bergeron's testimony regarding the defendant's increasing nervous demeanor during the stop and defendant's implausible explanation of his itinerary in its finding the defendant had the requisite guilty knowledge of the cocaine located in the car.
In reversing the defendant's conviction for possession of cocaine, the court of appeal relied upon its earlier holding in State v. LeBlanc, 01-1503 (La.App. 3 Cir. 6/5/02), 819 So.2d 424, in de-emphasizing the importance of defendant's status as driver and ostensible renter of the vehicle as evidence of defendant's guilty knowledge of the cocaine. Major at pp. 4-5, 857 So.2d at 1255. In LeBlanc, the court found that a rational fact finder could not have concluded beyond a reasonable doubt that the defendant driver knowingly possessed the marijuana found in a knapsack on the front passenger seat of his car. 01-1503 at. p. 8, 819 So.2d at 429. The court noted that although the defendant was the owner of the vehicle and the drugs were easily accessible from his location as driver, that evidence was not sufficient to prove he exercised dominion and control over the knapsack and its contents. Id. at pp. 4, 8, 819 So.2d at 427, 429. However, LeBlanc is distinguishable from the instant case because in LeBlanc a passenger in the vehicle claimed, both at the scene and at trial, to be the owner of the knapsack which contained the narcotics, as well as the drugs themselves. 01-1503 p. 5, 819 So.2d at 427. In the instant case, no other passenger claimed ownership of the cocaine found in the dashboard.
Furthermore, it appears the court of appeal reviewed the circumstantial evidence offered at trial separately, rather than as a whole, and offered an innocent interpretation and explanation for each piece of evidence, thereby concluding that a rational trier of fact could not have determined beyond a reasonable doubt that the defendant had guilty knowledge of the cocaine in the vehicle. However, the court of appeal erred in its review of the evidence. The sufficiency inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt, but rather whether a rational fact finder viewing the evidence as a whole could have found the defendant guilty beyond a reasonable doubt. Mussall, 523 So.2d at 1310-11. If rational triers of fact could disagree as to the interpretation of evidence, the rational fact finder's view of all of the evidence most favorable to the prosecution must be adopted. Id. at 1310. Based on the evidence as a whole, and viewed in its totality, reasonable fact finders could have inferred from the evidence presented at trial that the defendant was aware of the cocaine behind the dashboard and did have constructive possession of the drugs, thus rejecting the defense's hypothesis of innocence.
Accordingly, we hold that the court of appeal erred and impinged on the fact finder's discretion by substituting its own appreciation of the evidence for that of the trier of fact when it found the evidence insufficient to support the defendant's conviction for possession of cocaine. On the contrary, the evidence at trial, considered in totality, provided jurors with a rational basis for rejecting the defense's hypothesis of innocence that defendant unknowingly transported the cocaine and for finding beyond a reasonable doubt that he had constructive possession of the drugs concealed in the car.

Decree
For the foregoing reasons, the judgment of the court of appeal is reversed, defendant's *805 conviction and sentence are reinstated, and this case is remanded to the court of appeal for consideration of the remaining assignments of error pretermitted on original appeal.
REVERSED; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED.
NOTES
[1] Trooper Bergeron testified that the defendant had been following too close, one and a half car lengths, to the vehicle in front of him. He testified that such activity was the reason for many accidents in the area and that was the reason defendant was stopped.
[2] Passenger Eric Banks was determined to have disposed of the marijuana. Defendant was not charged in connection with the possession or use of marijuana in relation to this incident.
[3] The charges against the other three passengers for possession of cocaine were not prosecuted.
[4] "Shadow vehicle" is a term used by law enforcement to identify vehicles used by drug couriers to track and follow drug shipments during transit, particularly when the drugs are transported by unknowing parties.
[5] Since the court of appeal found defendant's first assignment of error worthy of merit, it did not address defendant's remaining assignments of error, namely: (1) that the sentence is unduly harsh and excessive under the circumstances of this case, and (2) that his Sixth Amendment right to a speedy trial was violated.